**Nan Mary KARNES, Respondent,**

v.

**MILO BEAUTY AND BARBER SUPPLY COMPANY, INC., d/b/a The Milo Corporation, et al., Appellants.**

**No. CX–89–82.**

Court of Appeals of Minnesota.

June 13, 1989.

Review Denied Aug. 15, 1989.

Gary L. Huusko, St. Paul, for respondent.

James P. Wilkins, John E. Holcomb, Millisor & Nobil, Akron, Ohio, Susan L. Segal, Lynn B. Noland, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for appellants.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FORSBERG, Judge.

Milo Beauty & Barber Supply Co., Inc. (Milo) and James Maddox appeal the jury's finding that statements written by Maddox defamed Nan Karnes. There was no motion for a new trial. We reverse.

### FACTS

Nan Karnes was hired by Milo as a manager-trainee in January 1982. After four months of training, Karnes was appointed store manager of Store 190. Milo fired Karnes on March 30, 1984.

During her managerial time, there were accounting procedures which seemed to give Karnes problems. These involved the policy for voiding and reringing a sale; the policy for selling to customers on credit; and the procedure to follow in issuing credits or refunds to a customer who returned items.

Milo was primarily a cash and carry operation. All credit accounts were to be paid within 30 days. Additional credit sales were not to be made if a customer was delinquent on the 30–day account. Two and one-half months prior to her termination, Karnes was instructed in her annual performance review that she needed to improve her handling of 30–day accounts. Karnes admitted she continued to sell to one particular business even when it was delinquent on previous sales. Karnes justified this by indicating that the business was a major customer, always paid eventually, and that the previous manager also allowed ongoing credit sales.

The store policy on refunds required the completion of an invoice, with customer name and address, for every refund. Instead, Karnes frequently issued credit to a customer by noting it on a sales invoice rather than completing a refund slip. James Maddox, Milo's manager of accounting and auditing, called Karnes to discuss a particular refund where a refund slip was not issued. Maddox informed Karnes of the refund policy and told her she must comply. The Daily Store Report Error Log continued to note situations where Karnes did not comply with the refund policy.

The accounting procedure which caused Maddox the most concern was Karnes' failure to follow the procedure for voided sales receipts. Maddox recognized there were a number of valid reasons which could result in a voided sales slip. However, when that occurred, the employee was to stop, total everything, take the receipt and write void across the back, initial it, and place in the register. The employee could then rering the sale. The slips were sent with the register tape to corporate headquarters.

The above procedure was important because of the risk of employee theft. An employee could take a legitimate sales receipt left behind by a customer, write void on the back, place it in the register and remove a corresponding amount of cash. The cash register drawer would then balance at the end of the day. The purpose of requiring the employee's initials was to give the corporate accounting and audit department a means of identifying the responsible person and checking the legitimacy of the void. Voids which were not initialed were especially suspect if the sale, or a similar sale, were not rerung.

Early in 1984, Maddox was notified by the accounting department that Store 190 had an excessive number of voids. The normal number for a store of similar sales volume was one or two per day, while Store 190 was averaging four or five per day. Of greater concern to Maddox was the fact that many voided slips were not initialed and had not been rerung.

Maddox contacted Ron Sonedecker, then director of field operations, and indicated he was concerned about employee theft. Sonedecker and Maddox agreed they should arrange a meeting with the regional and zone managers for Store 190. For unknown reasons, the meeting was not scheduled, which led Maddox to send a handwritten memo to Sonedecker indicating that Store 190 continued to have unsigned void slips whose sales were not rerung. The memo listed by day the number of voids and the total amount of the voided sales. The memo concluded:

> Store # 190 is taking (stealing) money from the cash register drawer. How much more noncompliance must we tolerate from Nan Karnes?

The memo was copied to Tom Cositgan, Milo's director of planning, and Ron Eyer, the controller. The only other person receiving a copy of the memo was Karnes' immediate supervisor, Dee DeHaven, who received a copy later with her instructions to terminate Karnes.

Karnes brought suit against Milo, alleging breach of contract and/or breach of covenant of good faith and fair dealing, defamation with regard to a comment made by DeHaven, intentional infliction of emotional distress, and defamation based on the memo written by Maddox. All counts were dismissed by directed verdict or summary judgment, except the claim based on Maddox's memo, which went to the jury.

The jury returned a special verdict in favor of Karnes. Karnes was awarded $47,899.45. Judgment was entered October 31, 1988. Milo and Maddox appeal.

## ISSUES

1. Was the jury's determination that the memo prepared by Maddox was defamatory manifestly contrary to the evidence?

2. Was the jury's determination that Maddox's statements were made with malice manifestly contrary to the evidence?

## ANALYSIS

On review, answers to special verdict questions will not be set aside unless they are perverse and palpably contrary to the evidence or where the evidence is so clear to leave no room for differences among reasonable people. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn. 1984). The evidence must be reviewed in the light most favorable to the jury verdict. *Milbank Mutual Insurance Co. v. Proksch*, 309 Minn. 106, 109, 244 N.W.2d 105, 107 (1976).

### I.

In order to be considered defamatory, a statement must be communicated to a third party, must be false, and must tend to harm the plaintiff's reputation. *Frankson v. Design Space International*, 394 N.W.2d 140, 142 (Minn.1986) (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980)).

Milo and Maddox first argue that the publication requirement was not met. We disagree. The Maddox memo was sent to three people and later shown to a fourth. The publication requirement was met.

Milo and Maddox maintain that the statements made by Maddox were not

false. They recognize that truth as a defense must go to the underlying implication of the statement "at least where the statement involves more than a simple allegation." *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 889 (Minn.1986). They insist that the statements were at most simple allegations, and that they did not have to prove that someone in fact was stealing from the drawer.

In his first statement ("Store #190 is taking (stealing) money from the cash drawer"), Maddox does not directly accuse Karnes of theft. He nevertheless accuses Store #190, which presumably could be anyone employed by the store. (There were at least three other store employees operating the cash register.) The next sentence ("How much more noncompliance must we tolerate from Nan Karnes") directly accuses Karnes of "noncompliance," presumably with store procedures. Viewed in the light most favorable to the verdict, these statements go beyond mere allegations and are conclusory; they could be interpreted by a jury as implying that Karnes was either stealing or allowing stealing to take place. In order to employ truth as a defense, Milo and Maddox would have to show the truth of the allegations, which they did not do. The jury's determination that Maddox's statements were defamatory is therefore not manifestly contrary to the evidence.

## II.

■ Even if a statement is defamatory, there may be no liability if the circumstances make it conditionally privileged and the privilege is not abused. *Lewis,* 389 N.W.2d at 889. The law generally recognizes a qualified privilege in communication between employees and employers "as long as the statements are made in good faith and for a legitimate purpose." *Stuempges,* 297 N.W.2d at 257. The employer has an interest in protecting itself and the public against dishonest employees. *McBride v. Sears, Roebuck & Co.,* 306 Minn. 93, 97, 235 N.W.2d 371, 374 (1975). Prior to submission of the case to the jury, the trial court here ruled that a qualified privilege existed.

■ This qualified privilege, however, may be overcome if it is abused. Such abuse is generally a jury question. *Stuempges,* 297 N.W.2d at 257. To show abuse, the plaintiff must show actual malice, which is defined as actual ill will, or intent to causelessly and wantonly injure the plaintiff. *Frankson,* 394 N.W.2d at 144 (citing *McBride,* 306 Minn. at 98, 235 N.W.2d at 375). Malice may be proved by extrinsic evidence of personal ill feeling or by intrinsic evidence such as exaggerated language or extent of publication. *Frankson,* 394 N.W.2d at 144 (citing *Friedell v. Blakely Printing Co.,* 163 Minn. 226, 231, 203 N.W. 974, 976 (1925)).

■ Milo and Maddox argue that there is no evidence to support the jury's finding of actual malice. We must agree. Maddox only met Karnes in person once when they were introduced at a social affair during a business convention. He spoke with her once on the phone. Karnes did not allege any personal animosity between herself and Maddox.

Karnes alleged that Maddox provided evidence of malice by testifying that he was bothered by the problems caused by Store #190. Maddox was head of the accounting and auditing department. He was faced with facts (the void slips) that he could reasonably find indicated the possibility of theft. It was entirely understandable that he was "bothered" by the situation and would want to take steps to investigate.

Karnes argued that ill will existed between her and her immediate supervisor, Dee DeHaven. Even if there had been ill will, DeHaven did not author the alleged defamatory statements. While an employee's actions may be imputed to a corporation, it would be difficult to impute one employee's feelings (DeHaven's) to another's (Maddox's) actions.

Karnes also argued the statements were over publicized, thus showing malice. The memo was sent to three upper-level management officers, all of whom had reason to be concerned about the integrity of

their employees. Karnes' direct supervisor received a copy with her instructions to fire Karnes. This does not constitute evidence of over publication.

Karnes finally claimed Milo and Maddox acted in a careless and wanton manner to injure her. She argued Maddox should have investigated further and found actual proof of theft before proceeding. However, based on the store procedures which Karnes acknowledged she did not follow and on the large number of unsigned void slips, Maddox had cause to suspect theft and initiate an investigation. Where such probable cause exists to investigate possible employee misconduct, it would be inconsistent to find that Milo and Maddox acted causelessly and wantonly. *McBride*, 306 Minn. at 97–98, 235 N.W.2d at 374–75.

## DECISION

While it was possible for the jury to find a defamatory statement, the evidence does not support a finding of actual malice to overcome the existing business privilege.

Reversed.