RIVERVIEW MUIR DORAN, LLC, Plaintiff,

v.

JADT DEVELOPMENT GROUP, LLC, et al., Appellants,

First Choice Bank, Respondent,

Darg, Bolgrean, et al., Defendants,

and

First Choice Bank, Respondent,

v.

JADT Development Company, LLC, et al., Appellants,

Riverview Muir Doran, LLC, et al., Defendants,

and

KKE Architects, Inc., Plaintiff,

v.

JADT Development Company, LLC, et al., Appellants,

First Choice Bank, Respondent,

Riverview Muir Doran, LLC, et al., Defendants.

No. A09-151.

Court of Appeals of Minnesota.

Dec. 8, 2009.

Stephen M. Harris, Meyer & Njus, P.A., Minneapolis, MN, for appellants.

Stephanie A. Ball, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, for respondent.

Considered and decided by STAUBER, Presiding Judge; KLAPHAKE, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellants, a developer and its owners, challenge the district court's determinations that respondent bank was entitled to foreclose its mortgage with appellant developer, that appellant developer is limited to a six-month redemption period, and that respondent bank is entitled to an award of attorney fees and a late-payment fee. We affirm as to the district court's determination of default, a six-month redemption period, and attorney fees, but we reverse and remand as to the late-payment fee.

## FACTS

Appellant JADT Development Company, LLC, a real estate development company owned by appellants Timothy and Doris Baylor, acquired land in Minneapolis near the Mississippi River with the intent to develop it in four phases. The construction of Phase I, consisting of 29 townhomes, was completed in October 2004. On March 22, 2005, appellants entered into a Construction and Term Loan Agreement (Loan Agreement) with respondent First Choice Bank to finance development of Phases II, III, and IV of the project.

The Loan Agreement established the terms of the loan and included a provision for multiple advances up to $19,125,000. JADT executed and delivered a mortgage that secured $19,125,000 "or so much thereof as may be advanced by Lender under the Note and pursuant to the Loan Agreement." The Baylors personally guaranteed JADT's obligations. The loan was payable in March 2007. JADT received an initial advance of $3,680,813.06, smaller advances in some of the following months, and regular monthly advances to cover the previous month's interest on the loan.

In May 2006, JADT defaulted on the loan, and appellants entered into a Forbearance Agreement with respondent. The Forbearance Agreement stated that JADT was in default because it failed to start required construction within 180 days of the date of the Loan Agreement and failed to pay real estate taxes due in 2005. The Forbearance Agreement also stated that as of May 3, 2006, JADT owed $4,038,503.72, that the purpose of the Forbearance Agreement was to give JADT time to secure other funding to complete the project, and that respondent would forbear from exercising its rights and remedies unless either (1) JADT failed to repay the loan by the new maturity date of November 9, 2006; or (2) JADT otherwise defaulted or breached its contractual duties to respondent. The Forbearance Agreement further provided that respondent would advance JADT up to $107,000 to demolish a building, that respondent had no obligation to make any further advances, and that the parties reaffirmed the terms and conditions of the Loan Agreement. Finally, the Forbearance Agreement contained a general release.

JADT again defaulted on the Loan Agreement by failing to make its final payment on November 9. Respondent assessed JADT a late-payment fee of $229,708.09 and subsequently brought an action to foreclose on the mortgage, to enforce the Baylors' personal guarantee, and to recover money damages from ap-

pellants, including the amount due and owing on the loan, the late-payment fee, and attorney fees. Respondent moved for and the district court granted summary judgment. The district court found JADT in default of the Loan Agreement, authorized foreclosure of the mortgage, limited JADT to a six-month redemption period, and awarded respondent attorney fees and late charges. This appeal followed.

## ISSUES

I. Is there a genuine issue of material fact as to whether respondent breached the Loan Agreement so as to excuse JADT's default?

II. Did the district court err in concluding that JADT had only a six-month redemption period?

III. Did the district court abuse its discretion in awarding attorney fees to respondent?

IV. Did the district court err in awarding a late payment fee to respondent?

## ANALYSIS

Summary judgment is appropriate only when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. "A material fact is one that will affect the result or outcome of the case depending on its resolution." *Musicland Group, Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 531 (Minn.App.1993), *review denied* (Minn. Jan. 27, 1994). The evidence must be viewed in the light most favorable to the nonmoving party. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). All doubts, inferences, and credibility determinations must be made in favor of the nonmoving party. *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 186, 84 N.W.2d 593, 605 (1957). The purpose of summary judgment is to determine whether or not issues of fact exist, not to resolve

issues of fact. *Albright v. Henry*, 285 Minn. 452, 464, 174 N.W.2d 106, 113 (1970).

## I.

Appellants do not dispute that JADT was in default on the Loan Agreement. Rather, appellants claim that summary judgment was improper because there is a factual dispute over whether respondent failed to timely advance funds to cover necessary marketing, architectural, and demolition expenses for the project, and therefore whether JADT's default was excused by respondent's own breach of the Loan Agreement. Appellants assert that "[i]t is elementary that a breach of a contract by one party excuses performance by the other." *Wasser v. W. Land Sec. Co.*, 97 Minn. 460, 466, 107 N.W. 160, 162 (1906).

Here, the Forbearance Agreement affirms JADT's default and contains a "General Release" clause stating that "in exchange for the concessions made by [respondent] under this agreement, [appellants] ... hereby release and forever discharge [respondent] ... from any and all claims, defenses ... or other causes of action ... whether arising by contract, statute, common law, or otherwise." The law encourages the settlement of disputes, and releases are generally presumed valid. *Sorensen v. Coast–to–Coast Stores, Inc.*, 353 N.W.2d 666, 669 (Minn.App.1984), *review denied* (Minn. Nov. 7, 1984). The law also presumes that "parties to a release agreement intend what is expressed in a signed writing." *Id.* at 669–70. Appellants do not challenge the validity or the intent of the release in the Forbearance Agreement. At most, it permits appellants to pursue claims or defenses that arose after the Forbearance Agreement was executed. The disputed obligations to advance funds for architectural and mar-

keting expenses relate to a time period prior to the date of the Forbearance Agreement.

■■■ At oral argument, appellants raised the claim that respondent failed to timely comply with the Forbearance Agreement provision requiring the advance of $107,000 to fund the demolition of a building. Because appellants raised this argument for the first time at oral arguments, it is waived. *See Melina v. Chaplin,* 327 N.W.2d 19, 20–21 (Minn.1982) (holding that issues not argued in briefs are waived). Regardless, appellants conceded at oral argument that respondent advanced funds for building demolition 38 days after the Forbearance Agreement was executed. The record does not present a material factual question over whether the timing of this demolition advance constituted a breach of either the Loan Agreement or the Forbearance Agreement. We conclude that the district court properly granted summary judgment determining that JADT's default was not excused and that respondent had the right to resort to its remedies under the Loan Agreement, including foreclosure.

## II.

■■■ The next issue is the length of the redemption period. Appellants argue that the district court erroneously interpreted Minn.Stat. § 580.23 (2008) in concluding that JADT is limited to a six-month, as opposed to a twelve-month, redemption period after the foreclosure sale. A district court's interpretation of a statute is a question of law subject to de novo review. *Ed Herman & Sons v. Russell,* 535 N.W.2d 803, 806 (Minn.1995). The role of a court in interpreting a statute is to discover and effectuate the legislature's intent. *Peterson v. Haule,* 304 Minn. 160, 170, 230 N.W.2d 51, 57 (1975). "The foreclosure by advertisement statutes, Minn.

Stat. ch. 580, indicate the allowable periods of redemption after a foreclosure sale," even in a foreclosure by action. *Norwest Bank Hastings Nat'l Ass'n v. Franzmeier,* 355 N.W.2d 431, 433–34 (Minn.App.1984). When real property is sold pursuant to a foreclosure, the mortgagor may redeem the property within a certain time period after the sale, by paying the amount for which the property was sold and certain other expenses. Minn.Stat. § 580.23. Section 580.23 provides that a mortgagor normally has a six-month redemption period, but is entitled to a twelve-month redemption period when the "amount claimed to be due and owing as of the date of the notice of foreclosure sale is less than 66–2/3 percent of the original principal amount secured by the mortgage."

The mortgage in this case provided that it secured repayment of the principal amount of $19,125,000, "*or so much thereof as may be advanced* by Lender under the Note and pursuant to the Loan Agreement." (Emphasis added.) Appellants dispute the district court's conclusion that the original principal amount secured by the mortgage was $4,530,307.02, the outstanding principle balance of the loan. Appellants argue instead that the original principal amount secured by the mortgage is $19,125,000.

If the intent of a statute is discernable from its plain and unambiguous language, we apply the plain meaning of the statute. *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007). But here, the phrase "original principal amount secured by the mortgage" is not defined by statute or case law and is broad enough to support either appellants' or the district court's interpretation. When the language of a statute is susceptible to more than one reasonable interpretation, the statute is ambiguous and this court may refer to other canons of construction

to discern the legislature's intent. *Id.* Legislative intent may be ascertained by considering factors such as the occasion and necessity for the statute, the circumstances under which it was enacted, the object to be attained by the statute, the law before the statute was enacted, and the consequences of a particular interpretation. Minn.Stat. § 645.16 (2008).

This court has previously addressed the circumstances under which section 580.23 was enacted. As we noted in *Franzmeier,* prior to 1967, the statutory-redemption period was "12 months in any situation." 355 N.W.2d at 433. In 1967, the redemption period was generally lowered to six months in acknowledgment of the fact that "most mortgagors do not redeem." *Am. Nat'l Bank v. Blaeser,* 326 N.W.2d 163, 164 (Minn.1982) (citing Note, *Proposed Changes in Minnesota Mortgage Law,* 50 Minn. L.Rev. 331, 333–38 (1965)). A law review note observed that the longer redemption period for mortgagors who owe less than "66–2/3 percent of the original principal amount secured by the mortgage," reflects a policy that "mortgagors with a large equity should have a relatively longer period to redeem." Note, 50 Minn. L.Rev. at 338–39. We conclude that the intent of section 580.23, subdivision 2(2) was to grant an extended redemption period to certain mortgagors, including those who, by virtue of having paid down their loan, could have a relatively large equity in their property and are more likely to redeem. We also note that in situations where such principal reduction has occurred, the mortgagee is more apt to recover the indebtedness owing to it in the foreclosure process.

As for determining what is the "original principal amount," we note that the loan that JADT received was a multiple-advance construction loan. In this type of lending, funds are usually advanced to pay for improvements to real estate as they are made. By contrast, in typical residential mortgage lending, all funds are advanced at closing, the amount is the same as the face amount of the mortgage, and the principal loan amount is related to the value of the property at the time that the loan is made. In the traditional, single-advance loan, the difference between the amount stated in the mortgage and the amount owing on the loan at the time of foreclosure is more apt to reflect the borrower's equity in the property. Because the construction loan secured by JADT's mortgage was intended to finance ongoing improvements to the property, the maximum amount of the loan that could be secured by the mortgage reflected an estimate of the total cost of developing the property that could be financed by respondent, not the value of the property at the time the parties closed on the loan. The funds in a multiple-advance construction loan can be made available to the developer as needed, and the developer might not draw that full amount. Here, JADT never received the full $19,125,000 before it defaulted on the loan.

We therefore hold that, in the context of a multiple-advance construction loan, the "original principal amount secured by the mortgage" for the purposes of determining a mortgagor's redemption period under Minn.Stat. § 580.23 is the greatest principal balance due at any time during the term of the loan, but not more than the maximum amount set forth in the mortgage. In this case, the "original principal amount secured by the mortgage" is $4,530,307.02, the greatest principal balance due at any time by JADT during the term of the loan. Because the amount due and owing on the loan far exceeds 66 2/3% of this amount, JADT is limited to a redemption period of six months rather than twelve months.

## III.

The third issue raised by appellant is whether the district court abused its discretion in awarding attorney fees and costs. The Loan Agreement required the borrower to pay "all costs and expenses required to satisfy the conditions of this Agreement, including but not limited to ... Lender's attorneys fees." Attorney fees are recoverable if authorized by statute or contract. *Bolander v. Bolander*, 703 N.W.2d 529, 548 (Minn.App.2005), *review denied* (Minn.App.2005). A district court's decision on the reasonableness of attorney fees is subject to review under an abuse-of-discretion standard. *Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 596 (Minn. App.1994).

### A.

Appellants first assert that a substantial amount of respondent's attorney fees were incurred in the process of correcting a scrivener's error in the mortgage created by respondent's attorneys. The error was in the legal description and was corrected by court order in the judicial foreclosure proceedings. Although the district court subtracted from respondent's award the fees incurred in drafting the erroneous version of the mortgage, appellants argue that the district court should have also subtracted the attorney fees that respondent incurred in correcting the error, because those fees were attributable to the original error. Undisputedly, judicial reformation of the legal description in the mortgage was part of the lawsuit. But the record indicates that reformation of the mortgage was unopposed and uncontroversial. We conclude that the attorney fees that respondent incurred in pursuing reformation of the mortgage were not substantial, and that the inclusion of these fees was at most de minimus error that does not justify a remand. *See Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn.App. 1985) (refusing to remand for de minimis error).

### B.

Appellants also claim that respondent was unsuccessful in pursuing a motion for a temporary injunction against a second mortgagee and that the district court erred in allowing respondent to recover attorney fees related to pursuing that unsuccessful motion. But when claims in a suit "involve a common core of facts or will be based on related legal theories," the district court should not attempt to distinguish between the claims when awarding attorney fees because "[m]uch of counsel's time will be devoted generally to the litigation as a whole." *Musicland*, 508 N.W.2d at 535 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). In *Musicland*, this court affirmed the district court's award of attorney fees despite the fact that some of the claims in the lawsuit were unsuccessful, because the legal theories "depended on proving a common core of facts" and the types of claims were related. 508 N.W.2d at 535. "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940). Attorney fees spent on a settlement agreement, although unsuccessful, were properly awarded by the district court because the fees "could be considered reasonable to the action." *Id.* at 536.

Here, appellants do not dispute that the unsuccessful motion arose at least as an indirect result of appellants' default and respondent's subsequent action to recover. We conclude that these fees reasonably relate to the overall litigation and that the district court did not abuse its discretion

by failing to subtract attorney fees relating to that motion.

### C.

Additionally, appellants argue that the district court's award of attorney fees was improper because respondent did not produce records containing a description of each item of work performed. Respondent contends that it redacted the descriptions of work performed in order to protect privileged information. Minn. R. Gen. Pract. 119.01 sets out a procedure for recovering attorney fees by motion. Minn. R. Gen. Pract. 119.02 provides that the motion must be accompanied by an attorney's affidavit that includes: "A description of each item of work performed, the date upon which it was performed, the amount of time spent on each item of work, the identity of the lawyer or legal assistant performing the work, and the hourly rate sought for the work performed." The 1997 Advisory Committee Comment for Minn. R. Gen. Pract. 119.04 states that in order to protect privileged information that might appear in attorney billing statements, a moving party may either submit unredacted billing statements to a district court for in camera review or, alternatively, "the court can permit submission of redacted copies, with privileged material removed from all copies."

We note that rule 119 "is not intended to limit the court's discretion, but is intended to encourage streamlined handling of fee applications." *Gully v. Gully*, 599 N.W.2d 814, 826 (Minn.1999) (quotation omitted). When the district court is familiar with the proceedings and the work done, it is within the district court's discretion to award fees without first acquiring a detailed accounting, although we advise against this practice. *River Towers Ass'n v. McCarthy*, 482 N.W.2d 800, 805–06 (Minn.App.1992), *review denied* (Minn. May 21, 1992). Here, because respondent submitted unredacted copies of billing statements to the district court for review in camera, we discern no violation of rule 119 and no abuse of discretion.

### D.

Next, appellants argue that the district court improperly allowed respondent to continue to supplement its claims for attorney fees in the orders that the district court issued subsequent to its April 30, 2008 order. Appellant provides no legal authority stating that a district court is unable to add attorney fees that a party has continued to incur after that judgment has been entered. Moreover, because the issue of attorney fees is "collateral to the merits of the underlying litigation," a district court retains jurisdiction to consider the issue even while an appeal is pending. *Kellar v. Von Holtum*, 605 N.W.2d 696, 700 (Minn.2000). We therefore reject this argument.

### IV.

The final issue raised by appellants is whether respondent was authorized to charge JADT a late-payment fee for missing its final payment on the loan. Under the terms of the Forbearance Agreement, JADT was required to pay off the balance of the loan when the loan matured on November 9, 2006. On November 20, 2006, after JADT failed to pay off the balance of the loan, respondent charged JADT a $229,782.03 late-payment fee, which represented five percent of the loan's outstanding balance of $4,595,640.52. Respondent maintains that it was authorized to charge this late-payment fee under section 2.6 of the Loan Agreement, which states:

> In the event that any required payment of principal or interest hereunder

(*other than the final payment to be made on the Maturity Date*) is not made within ten days after the due date thereof, Borrower shall pay to Lender a late payment charge equal to five percent (5%) of the amount of the overdue payment, for the purpose of reimbursing Lender for a portion of the expense incident to handling the overdue payment.

(Emphasis added.)

The highlighted provision of the Loan Agreement specifically exempts the final payment of the loan from the late-payment fee. Respondent does not identify any term in the Loan Agreement, Forbearance Agreement, or related documents allowing a late-payment fee for missing this final payment. But the record is not conclusive as to whether any portion of the indebtedness could be subject to a late-payment fee under this section, and the district court does not address this question. We therefore conclude that respondent has not established that it was authorized to charge this late-payment fee to JADT as a matter of law and that the record does not support an outright reversal. Accordingly, we reverse the district court's grant of summary judgment as to this portion of respondent's award and remand the late-payment fee issue for further proceedings.

## DECISION

We conclude that appellants fail to raise a genuine issue of material fact as to whether the district court erred in determining that JADT's default of the Loan Agreement was not excused by any breach by respondent and that JADT was limited to a six-month redemption period. We also conclude that the district court did not abuse its discretion in its award of attorney fees to respondent. We therefore affirm summary judgment as to these issues. We also conclude that respondent has not established that it was authorized to charge JADT the late-payment fee, and we reverse and remand as to that issue.

**Affirmed in part, reversed in part, and remanded.**