**Gregg J. SMITS, Respondent,**

v.

**WAL–MART STORES, INC., Appellant.**

No. CX–94–906.

Court of Appeals of Minnesota.

Dec. 20, 1994.

Review Denied Feb. 14, 1995.

David A. Ranheim, Michael J. Wahoske, Edward B. Magarian, Dorsey & Whitney, Minneapolis, for appellant.

Ronald H. McLean, Jane L. Dynes, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, ND, for respondent.

Considered and decided by KLAPHAKE, P.J., and FORSBERG and FOLEY,* JJ.

## OPINION

KLAPHAKE, Judge.

Respondent Gregg J. Smits (Smits) sued appellant Wal–Mart Stores, Inc. (Wal–Mart), claiming Wal–Mart defamed and falsely imprisoned him on June 16, 1992. Prior to trial, Smits disclosed that he would seek damages for negligent infliction of emotional distress in connection with his defamation claim. The trial court ruled that Wal–Mart was not entitled to a qualified privilege for defamation or to merchant immunity under Minn.Stat. § 629.366 (1990). The court instructed the jury on defamation, false imprisonment, and negligence. The jury found Wal–Mart liable on all three claims, and awarded Smits $182,000 in damages.

Wal–Mart appeals from the order denying its motion for judgment notwithstanding the verdict (JNOV) or for a new trial, and from the judgments entered. We affirm the court's rulings on qualified immunity and the merchant immunity statute, and the jury's verdict on defamation and its award of $2,000 in special damages. We reverse the jury's findings of liability for false imprisonment and negligence, and remand for a new trial on general damages for defamation.

## FACTS

Smits was an Asset Protection Manager for the Fargo/Moorhead Target Stores. On June 16, 1992, Smits' supervisor asked him to assist Cal Litsey, an intellectual property lawyer, and Barbara Andrews, a loss preven-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

tion consultant. Litsey and Andrews had been retained by Target to investigate whether Wal–Mart was displaying inaccurate information about Target on its in-store signs.

The three entered the Wal–Mart store in Dilworth, Minnesota. They did not identify themselves or otherwise inform Wal–Mart employees about why they were there. Smits wore a long jacket and a large "fanny" pack around his waist. Inside the pack, he carried a camera, which he removed when necessary to take pictures of signs and displays. Both the pack and camera were owned by Andrews.

Wal–Mart employee Tiffany Jents noticed Smits take two flash pictures near the cashiers' stands. Jents pointed Smits out to another employee, Bobby Olson, Jr. The two employees watched Smits put the camera in the fanny pack and leave the store. Smits saw Jents watching him, but did not speak to her or otherwise identify himself.

Believing Smits had stolen the camera, Jents notified Gordon Brandt, the Assistant Manager on duty. Brandt went outside and saw Smits, Litsey, and Andrews get into Smits' car and drive away. Brandt obtained the car's license plate number. Smits, Litsey, and Andrews saw Brandt watching them, but did not understand his interest in them. They drove to the Moorhead Target located a short distance away.

Brandt immediately tried to determine whether Smits had stolen the camera. Jents and Olson admitted they had not seen Smits remove a camera, film, or batteries from the shelf. Brandt checked with the camera and film departments, but could not confirm that a camera or film was missing. The store greeter, who marked merchandise being carried into the store by customers, told him she had not marked a camera.

Brandt decided to call the police. He could not find the local police number, so he dialed 911. According to the recording of the 911 call, Brandt told the operator he had probably used the wrong number, but needed to talk to a police officer. He specifically stated: "I just witnessed a shoplifter." He then described Smits' car and gave the license plate number. He indicated the direction in which Smits had driven and described the driver as "wearing a green jacket." Brandt stated that a "35mm" camera had been taken worth about $40.

The operator gave the information to area police officers by radio. An officer spotted Smits' car in the Moorhead Target parking lot. Because Smits had gone from Wal–Mart to Target, the officers suspected a shoplifting ring. Several officers responded to the call and watched Smits' car. Smits soon exited the Target store, got into his car, and left the parking lot. A Moorhead police car pulled behind him and a Dilworth police car blocked the front of his car. He was ordered to exit his car, drop his keys, and place his hands on the trunk of his car. A total of six police cars responded to the call.

The officers told Smits he was stopped for shoplifting a camera at Wal–Mart. Smits refused to explain what he had been doing at Wal–Mart, but offered his Target identification, which showed he was Target's security officer. He told the officers the camera belonged to someone in the Target store. He flagged down a Target manager, who summoned Litsey, Andrews, and another Target manager. Andrews told the officers she owned the camera, but Smits was not released until an officer went to Wal–Mart and learned no one at Wal–Mart had seen Smits remove the camera from the shelf. The detention, which lasted for approximately 20 minutes, took place at 5:00 p.m., when many Target employees were leaving work for the day.

Smits testified that, following the incident, he was humiliated and upset. He was uncomfortable at work and co-workers made comments to him about the incident. He felt he had lost other employees' respect and his enthusiasm for his job. He applied for a transfer and was moved to a high-risk store in northeast Minneapolis. He testified that working conditions at the new location were more dangerous, his cost of living was higher, and he had minimal time available to spend on career development. Smits also claimed he felt increased stress as a result of the incident.

## ISSUES

I. Did the trial court properly determine Wal–Mart was not protected by a qualified privilege for making defamatory statements?

II. Did the trial court err in denying Wal–Mart's motion for JNOV on the false imprisonment claim?

III. Did the trial court properly determine that Wal–Mart was not entitled to protection from civil liability under the merchant immunity statute?

IV. Did the trial court err in submitting the question of negligence to the jury?

V. Is a new trial necessary on the issue of general damages in connection with the defamation claim?

## ANALYSIS

### I. Qualified Privilege

■ Wal–Mart argues that good-faith reports of suspected criminal activity made to law enforcement officials should be qualifiedly privileged, and that it was entitled to such a privilege in this case. While many states recognize such a privilege, this is a case of first impression in Minnesota. *See Fridovich v. Fridovich*, 598 So.2d 65, 67–69 (Fla.1992) (following majority of states in adopting qualified privilege).

Minnesota case law has recognized that defamatory statements may be privileged in some circumstances:

> A communication or publication made in good faith upon any subject matter in which the party communicating or publishing has an interest, or in reference to which he has a duty, public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged.

*Friedell v. Blakely Printing Co.*, 163 Minn. 226, 229–30, 203 N.W. 974, 975 (1925). Public policy reasons for encouraging a certain type of communication may create a proper occasion for a qualified privilege. *See Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn.1986); *Wilson v. Weight Watchers of Upper Midwest, Inc.*, 474 N.W.2d 380, 383 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 16, 1991). A

qualified privilege for good-faith reports of suspected criminal activity made to the police would serve the public interest, despite the risk that some reports might be defamatory. *Cf. McGranahan v. Dahar*, 119 N.H. 758, 408 A.2d 121, 127–28 (1979) (potential harm suffered by one accused of criminal activity is minimal when no charges are filed; society has stronger interest than accused in encouraging citizens to report suspected criminal activity). Thus, we conclude that a qualified privilege may exist when an individual makes a good faith report of suspected criminal activity to law enforcement officials. Such a privilege applies, however, when communication is made with probable cause and for a proper purpose and occasion. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn.1980).

■ For several reasons, we do not believe that Wal–Mart satisfied the necessary qualifications in this case. First, there was no proper occasion for Brandt's statements to the 911 operator. Wal–Mart employees were well-versed in the proper procedures for detention of suspected shoplifters, and none of the employees involved believed they had grounds to make an in-store detention in this case. *See id.* at 257 (falsity of employer's statements made privilege inapplicable, even though public interest would be served by recognizing privilege for employers asked to evaluate former employees). In addition, Brandt's investigation of the incident did not substantiate that a crime had occurred. Brandt was unable to confirm that Smits had been in the camera or film departments. No one found discarded camera, film, or battery packaging. Because Brandt's investigation was fruitless, we conclude that he lacked reasonable grounds to believe the statements he made to the 911 operator were valid. *See Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn.1990) (employer must first investigate circumstances and uncover sufficient evidence to establish probable cause).

The trial court therefore properly ruled that Wal–Mart was not entitled to a qualified privilege for its defamatory statements. *See Lewis*, 389 N.W.2d at 889 (whether communication is privileged is question of law). We

affirm the jury's finding of liability on Smits' defamation claim.

## II. False Imprisonment

■ A party is not liable for false imprisonment for conveying information about suspected criminal activity unless that party directly persuades or commands the police to detain the suspect. *See* Restatement (Second) of Torts, § 45A cmt. c (1965). Unless a person's conduct rises to the level of instructing the police to arrest a person, no liability can be imposed. *Id.; see Ward v. National Car Rental Sys.*, 290 N.W.2d 441, 442 (Minn. 1980) (clerk telling police to bring plaintiff to airport constituted "instigating" the detention).

■ In this case, Brandt's conduct was insufficient as a matter of law to establish that he directed or instigated Smits' detention. Although Brandt called 911 to report the suspected crime, he immediately indicated that he knew he should not have used 911. He stated he wanted to make a report, and acquiesced readily in the operator's plan to send someone for that purpose. The officers who testified indicated they would have reacted no differently if Brandt had stated he merely suspected a theft. Based upon their own independent observations, the officers decided how to respond. Because Brandt did not direct Smits' detention, the trial court erred in denying Wal–Mart's motion for JNOV on this claim. *See Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983) (JNOV appropriate only if evidence so overwhelmingly one-sided that reasonable minds cannot differ about correct result).

## III. Merchant Immunity Statute

■ Wal–Mart argues the trial court erred in finding Wal–Mart was not protected by the merchant immunity statute, Minn. Stat. § 629.366 (1990). That statute creates a limited defense for merchants who detain a shoplifting suspect in accordance with its provisions. *See Altman v. Knox Lumber Co.*, 381 N.W.2d 858, 862 (Minn.App.1986) (interpreting earlier version of statute as providing defense to false imprisonment), *pet. for rev. denied* (Minn. Apr. 11, 1986).

Wal–Mart did not detain Smits to ascertain who he was or whether the camera was stolen. The trial court therefore properly concluded that Wal–Mart was not entitled to protection under the statute.

## IV. Negligence

■ The trial court instructed the jury on the elements of negligence, and included in a special verdict form two questions concerning Wal–Mart's alleged negligence. Wal–Mart argues that submitting negligence to the jury was error because defamation and false imprisonment are intentional torts and negligence was not raised. We agree. Smits' decision to seek damages for negligent infliction of emotional distress did not justify submitting the issue of Wal–Mart's negligence. *See Strauss v. Thorne*, 490 N.W.2d 908, 913 (Minn.App.1992) (damages for negligent infliction of emotional distress available for mental anguish stemming from defamation), *pet. for rev. denied* (Minn. Dec. 15, 1992). We therefore conclude the trial court improperly submitted negligence as a separate claim, and reverse the jury's finding of liability for negligence.

## V. Damages

■ The jury awarded Smits $2,000 for "rental and insurance increases," $60,000 for "harm to his reputation and standing in the community," $60,000 for "mental or emotional distress," and $60,000 for "humiliation and embarrassment." Wal–Mart argues the trial court improperly submitted Smits' claim for increased rent and insurance costs. Smits testified that the incident caused him to transfer to a new location and incur these increased costs. These damages are not remote and speculative, but are actual economic losses proven to be caused by the defamatory statements. *See Jackson v. Reiling*, 311 Minn. 562, 563, 249 N.W.2d 896, 897, *cert. denied*, 432 U.S. 906, 97 S.Ct. 2951, 53 L.Ed.2d 1078 (1977); *see also Stuempges*, 297 N.W.2d at 258–59. We therefore affirm the jury's award of $2,000 in special damages.

■ Because we have reversed the findings of liability on false imprisonment and negligence, we must determine whether the award of general damages still stands on the

remaining defamation claim. Wal–Mart objected to the special verdict form because the general damages questions were not associated with the specific causes of action. While the elements of damages for the two causes of action may be similar, we agree that there may be a temporal difference between damages caused by defamation and those caused by false imprisonment. Wal–Mart is therefore entitled to a new trial on the issue of general damages in connection with Smit's defamation claim.

## DECISION

The trial court properly determined that Wal–Mart was not entitled to a qualified defamation privilege or to immunity from civil liability under the merchants' immunity statute. The court erred, however, in failing to grant Wal–Mart's motion for JNOV on Smits' false imprisonment claim and in submitting a claim of negligence to the jury.

We affirm the jury's finding of liability for defamation and its award of $2,000 in special damages. We reverse the general damages award of $180,000, and remand for a new trial on that issue.

**Affirmed in part, reversed in part and remanded.**