_____

No. 95-1135
_____

Jo Ann Mudlitz,                    *
                                   *
          Appellant,               *
                                   *
     v.                            *  Appeal from the United States
                                   *  District Court for the District
Mutual Service Insurance           *  of Minnesota.
Companies dba MSI Insurance,       *
                                   *
          Appellee.                *


_____

          Submitted:  October 18, 1995

             Filed:  January 31, 1996
_____


Before BOWMAN, FLOYD R. GIBSON, and BRIGHT, Circuit Judges.

_____


BRIGHT, Circuit Judge.

     Jo Ann Mudlitz brought this diversity suit in the district
court[1] against her former employer, Mutual Service Insurance
Companies (MSI) for breach of contract, breach of covenant of good
faith and fair dealing and misrepresentation.  The district court
granted MSI's motion for summary judgment, and Mudlitz appeals.  We
affirm the district court's grant of summary judgment.

_____

     [1]The Honorable James M. Rosenbaum, United States District
Judge for the District of Minnesota.

## I.    BACKGROUND

Mudlitz, a senior insurance underwriter, began working for MSI on October 7, 1991 as an at-will employee.  Mudlitz received a copy of the MSI employee handbook, which provided:

> You may resign your employment at any time.  For any reason or for no reason.  And the company reserves the same right to terminate the . . . employment of any employee under the same conditions.

Employee Handbook, Addendum at 2.  Less than a year after her employment began, Mudlitz's supervisor gave her a memorandum titled "Performance Warning," dated August 12, 1992.  This memorandum detailed a variety of problems, including Mudlitz's alleged negative attitude and resistance to authority.  The memorandum provided that Mudlitz's continued employment at MSI was dependent on her attaining eight expectations, including "show[ing] positive attitude and behavior[.]"  Addendum at 10.  The memorandum concluded:

> Your behaviors are actions of serious resistance to authority.  We will review your behavior and performance [sic] again in thirty days.  If your current behavior and performance continue in this unacceptable manner, this will be grounds for termination at that time.  If your behavior and performance deteriorates or if improvement in your attitude is not demonstrated within the next thirty day period, your employment relationship with MSI may be terminated prior to the end of the thirty day performance period.
>
> If your behavior and performance improves during that time but at any time slips back, there will be grounds for termination without additional notice.
>
> I would like to emphasize to you that this is a confidential matter and <u>must</u> <u>not</u> be discussed with anyone.  This is in keeping with your best interests.  Failure to do so will be grounds for immediate dismissal.

Performance Warning (emphasis in original).  Addendum at 11.

Mudlitz met with her supervisors on Thursday, August 13, 1992 to discuss the Performance Warning and continued to work through the next day.  Mudlitz then suffered an undiagnosed illness and did not return to work until Monday, August 24, 1992.  At that time she was given a memorandum dated August 19, 1992, which stated:

> Jody, during the past week I have had the opportunity to speak individually with each person in the Group Underwriting Department.  As I explained in our meeting of Thursday, August 13, 1992, I had learned of a possible personnel problem in the Department.  The allegation was that a person or persons within the . . . Department were documenting every negative move made by your Manager, Betty House, with the expressed purpose of getting her fired and disgracing her.  The allegation further stated that certain documentation items were, in fact, fabricated to further the cause.
>
> [The memorandum details five acts of alleged misconduct by Mudlitz.]
>
> Your actions are considered to be gross misconduct and result in your immediate involuntary termination of employment with Mutual Service Life Insurance Company.

Termination Notice, Addendum at 76-77.

Mudlitz brought this diversity suit in the district court, contending that the Performance Warning reformed her employment-at-will contract to a terminable-for-cause only contract and created a covenant of good faith and fair dealing, and that MSI breached the employment contract and covenant by terminating her employment without cause.  Mudlitz also alleged that the Performance Warning, with the Termination Notice, gave rise to a claim for damages based on misrepresentation by the employer.

Following discovery, the district court granted MSI's summary judgment motion against Mudlitz on her claims of breach of contract, breach of covenant of good faith and fair dealing and misrepresentation.  On appeal, Mudlitz argues that the grant of

summary judgment was improper because questions of material fact exist for all of her claims.

**II.  DISCUSSION.**

A grant of summary judgment is reviewed de novo.  Tindle v. Caudell, 56 F.3d 966, 969 (8th Cir. 1995).  Summary judgment is proper if, taking all facts and reasonable inferences from facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Id.; see also Fed. R. Civ. P. 56(c). The non-moving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  Tindle, 56 F.3d at 969 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Because jurisdiction in this case is based on diversity of citizenship, Minnesota substantive law applies, see, e.g., Farr v. Farm Bureau Ins. Co. of Nebraska, 61 F.3d 677, 679 (8th Cir. 1995).

**A.  Breach of Contract.**

Under the general rule of employment contract law in Minnesota, Mudlitz served as an at-will employee and could be terminated at any time with or without cause.  See Cederstrand v. Lutheran Brotherhood, 117 N.W.2d 213, 221 (Minn. 1962); but see Hunt v. IBM Mid America Employees Federal Credit Union, 384 N.W.2d 853, 856 n.7 (Minn. 1986) (describing exceptions to at-will doctrine).  Mudlitz contends, however, that MSI reformed her employment-at-will contract into a terminable-for-cause only contract by warning her that she would be terminated in thirty days if she did not improve her behavior.

In making this argument, Mudlitz relies on Minnesota decisions holding that provisions in employee handbooks can modify employment-at-will contracts and require cause for termination.

-4-

See Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701 (Minn. 1992); Lewis v. Equitable Life Assur. Soc., 389 N.W.2d 876 (Minn. 1986); Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn. 1983).  The Pine River court noted that an employee handbook provision

> if in form an offer, and if accepted by the employee, may create a binding unilateral contract.  The offer must be definite in form and must be communicated to the offeree.  Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions.

333 N.W.2d at 626.

Although the MSI Employee Handbook explicitly created an employment-at-will contract, Mudlitz nevertheless argues that this court should expand the principle of Pine River and construe a disciplinary notice such as the one here as creating a contract modifying the at-will arrangement.  Mudlitz cites no Minnesota decision indicating that an explicit employment-at-will contract contained in an employee handbook can be reformed to a terminable-for-cause agreement as the result of the issuance of a disciplinary warning to one employee, while other similar employees are terminable "at-will."  Nothing in the language or circumstances of the Performance Warning here reasonably creates an inference that MSI was offering Mudlitz a contract which provided her with greater rights than she had under the Employee Handbook.  We agree with the district court that:

> it is wholly irrational to assume that a notice given under [these] circumstances, where an employee is being disciplined and warned that [her] job is about to be terminated, would somehow ripen into an assured contract of a progressive discipline over that 30-day period.  It beggars the imagination.

Summary Judgment Transcript, Addendum at 5. The <u>Pine River</u> court admonished that "[n]ot every utterance of an employer is binding. It remains true that the employer's prerogative to make independent, good faith judgments about employees is important in our free enterprise system." <u>Pine River</u>, 333 N.W.2d at 630 (quotations omitted).

The Performance Warning could not, as a matter of fact or law, have modified Mudlitz's employment-at-will contract, and MSI did not breach that contract when, as Mudlitz alleges, it terminated her employment without cause. The district court did not err in ordering summary judgment for Mudlitz's breach of contract claim.

**B.  Covenant of Good Faith and Fair Dealing.**

Mudlitz argues that the Performance Warning created a covenant of good faith and fair dealing between MSI and herself, and that MSI breached that covenant by dismissing her without cause. In <u>Poff v. Western Nat. Mut. Ins. Co.</u>, 13 F.3d 1189 (8th Cir. 1994), this court noted that "the Minnesota Supreme Court has squarely held that there is no implied covenant of good faith and fair dealing in Minnesota employment contracts." <u>Id.</u> at 1191 (analyzing <u>Hunt v. IBM Mid America Employees Federal Credit Union</u>, 384 N.W.2d 853, 858-59 (Minn. 1986)). To create an express covenant of good faith and fair dealing, "there must be specific and definite terms that meet the contractual requirements of an enforceable unilateral offer. . . . [T]he same specificity required to modify the at-will relationship is also required to create an express covenant of good faith and fair dealing." <u>Id.</u>

As noted above, the Performance Warning did not reform Mudlitz's employment contract to require cause for termination, and MSI did not promise to act in good faith towards Mudlitz. Because the Performance Warning did not expressly create a covenant of good faith and fair dealing, and because a covenant of good faith and

-6-

fair dealing may not be inferred, the district court properly granted summary judgment for this claim.

## C. Misrepresentation.

Mudlitz claims that MSI either intentionally, recklessly or negligently made untrue statements about her performance and opportunity to continue her employment in the Performance Warning and Termination Notice, and she seeks damages for misrepresentation.

Reliance and damages are necessary elements for a prima facie case of misrepresentation. See Hanks v. Hubbard Broadcasting, Inc., 493 N.W.2d 302, 308 (Minn.App. 1992) (listing elements). Mudlitz does not describe how she relied on the alleged misrepresentations made by MSI, or what damages she suffered. Mudlitz merely asserts that she "justifiably and actually relied on the representations made by MSI," and "suffered damages as a result of her reliance on the representations made by MSI." Appellant's Brief at 26. While Mudlitz continued working after receiving the Performance Warning, this alone is legally insufficient to act as reliance. See Hanks, 493 N.W.2d at 309 ("We recognize that where an at-will employee merely continues to work and does not claim to have turned down any offers of employment based upon an employer's representations, no reliance will be found"). Mudlitz's assertions of damages are purely conclusory, and she alleges no facts upon which a finding of damages could be based.

Assuming, as we must, that Mudlitz is correct and all of the factual statements in the Performance Warning and Termination Notice are false, she has failed to supply the necessary elements of reliance and damages for her prima facie case. Mudlitz has not met her burden under Fed. R. Civ. P. 56(e), and the district court properly entered summary judgment on her claim for the tort of misrepresentation.

**III. CONCLUSION**

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.