# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-1849

———————

David Somers,     *

                       *

     Plaintiff - Appellant,     *

                       *    Appeal from the United States

     v.                       *    District Court for the

                       *    District of Minnesota.

City of Minneapolis, et al.,     *

                       *

     Defendants - Appellees.     *

———————

Submitted:  December 15, 2000

Filed:  March 29, 2001

———————

Before LOKEN and MAGILL, Circuit Judges, and BATTEY,[*] District Judge.

———————

LOKEN, Circuit Judge.

The City of Minneapolis terminated seasonal laborer David Somers for failing to report to work following the 1997 spring call-back. Somers filed this action against the City and several of its employees, asserting a claim under 42 U.S.C. § 1983 that the City violated his right to procedural due process by denying him a post-termination hearing. When terminated, Somers had been a City employee for more than six months but less than one year, and was still a probationary employee under the applicable

———————————————

[*]The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

collective bargaining agreement.  Probationary employees lack a property interest in continued employment entitling them to procedural due process protection under the Fourteenth Amendment.  But Somers had worked beyond the six-month probationary period specified in the Minneapolis City Charter.  Concluding the collective bargaining agreement is controlling, the district court[1] granted summary judgment dismissing Somers's § 1983 claim.  The court also dismissed his additional claims for breach of contract, defamation, and violation of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA").  Somers appeals.  We affirm.

## I.  § 1983 Due Process Claim.

Somers worked as a seasonal laborer from April to November 1996.  On April 2, 1997, the City mailed a notice directing him to return to work on April 7.  Somers failed to report, later claiming he did not receive the return-to-work notice.  In mid-April, he called the City to ask why he had not been called back to work.  Over the next few weeks, Somers spoke several times with a human resources consultant and met once with a City management analyst for the Department of Public Works.  In early June, he received notice of a hearing to review alleged violations of Civil Service Rules for failing to report to work and for taking an absence without leave.  Somers attended the informal hearing and was subsequently terminated for these violations.  He requested a post-termination hearing.  The City's Civil Service Commission denied the request, citing its Rule 11.06 B:  "Employees who have not completed their probationary period have no appeal rights."  Somers then filed this § 1983 action.

To succeed on a procedural due process claim, Somers must establish that he had a constitutionally protected property interest, that is, a "legitimate claim of entitlement" to continued employment by the City.  Board of Regents v. Roth, 408 U.S. 564, 577

---

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

(1972). If a public employee may not be terminated except for good cause, that is a property interest entitled to due process protection. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985). On the other hand, an at-will probationary employee does not have a protected property interest in continued public employment. See Tautfest v. City of Lincoln, 742 F.2d 477, 480 (8th Cir. 1984).

Chapter 19 of the Minneapolis City Charter established the Civil Service Commission. Section 11 of chapter 19 provides, "No officer or employee . . . after six months continuous employment shall be removed or discharged except for cause, upon written charges and after an appropriate opportunity to be heard." Somers relies upon this Charter provision in arguing he had a property interest when terminated.

As a seasonal laborer, Somers was within the bargaining unit of City Employees Local Union No. 363. At the time of termination, the collective bargaining agreement between Local 363 and the City provided:

> Section 5.01 – Just Cause. Disciplinary action may be imposed upon an employee who has satisfactorily completed the initial probationary period only for just cause.

> Section 7.07 – Probationary Periods. All initial probationary periods shall normally be twelve (12) months in duration . . . . An employee may be removed from the position at the discretion of the appointing authority. Such removal shall not be subject to the grievance/arbitration provisions of this Agreement.[2]

The City argues this agreement superseded chapter 19, section 11, of the City Charter, extending Somers's probationary period to one year. Thus, as the district court

---

[2]Somers testified that Local 363 declined to represent him at the June 1997 informal hearing because he was still a probationary employee.

recognized, the property interest issue turns on the relationship between the City Charter and the collective bargaining agreement under Minnesota law.

In 1971, the Minnesota Legislature enacted the Public Employment Labor Relations Act ("PELRA"), now codified at MINN. STAT. ch. 179A. Its purpose was to grant public employees the right to organize and to bargain collectively "subject however, to the paramount right of the citizens of this state to keep inviolate the guarantees for their health, education, safety and welfare." 1971 Minn. Laws Extra Sess. ch. 33, § 1. As amended in 1973, § 6 of PELRA provided in part:

> Subd. 2. A public employer has an obligation to meet and negotiate in good faith with the exclusive representative of the public employees in an appropriate unit regarding grievance procedures and the terms and conditions of employment . . . .

> Subd. 5. Any provision of any contract . . . which . . . would be in violation of . . . a municipal home rule charter or ordinance or resolution adopted pursuant thereto . . . provided such . . . home rule charter . . . is not in conflict with sections 179.61 to 179.66, shall be returned to the arbitrator for an amendment to make the provision consistent with the . . . charter . . . .

MINN. STAT. § 179.66 (1982).[3] The Supreme Court of Minnesota construed these provisions in International Brotherhood of Teamsters v. City of Minneapolis, 225 N.W.2d 254, 258 (Minn. 1975), and concluded that, "where a conflict arises between a provision in a contract required by [PELRA] and a provision of a home rule charter the legislature intended to give priority to the charter provision." Under this version of PELRA, Somers's claim to a property interest under the City Charter would doubtless prevail.

---

[3]The 1973 amendment added the "not in conflict" proviso to subdivision 5. See 1973 Minn. Laws ch. 635, § 16.

However, in 1983 the Legislature modified the priority it had formerly given to home rule charters by adding the following paragraph to § 179.66, subd. 2:

> The public employer's duty under this subdivision [to meet and negotiate with public employee unions] exists notwithstanding contrary provisions in a municipal charter, ordinance, or resolution. A provision of a municipal charter, ordinance, or resolution which limits or restricts a public employer from negotiating or from entering into binding contracts with exclusive representatives is superseded by this subdivision.

1983 Minn. Laws ch. 364, § 3. In Gallagher v. City of Minneapolis, 364 N.W.2d 467, 470 (Minn. App. 1985), the Minnesota Court of Appeals rejected a suit by the Minneapolis Civil Service Commission to declare a collective bargaining agreement void as in conflict with the City Charter. The court concluded the 1983 amendment of § 179.66, subd. 2, superseded the conflicting portion of § 179.66, subd. 5.

In 1984, the Legislature recodified PELRA in Chapter 179A, intending only "to eliminate obsolete and redundant language . . . and make the law easier to read and understand." 1984 Minn. Laws ch. 462, § 1. Though slightly reworded, the relevant provisions of former § 179.66, subd. 2 and 5, were retained in the new statute:

> MINN. STAT. § 179A.07, subd. 2(a). A provision of a municipal charter, ordinance, or resolution which limits or restricts a public employer from negotiating or from entering into binding contracts with exclusive representatives is superseded by this subdivision.

> MINN. STAT. § 179A.20, subd. 2(2). No provision of a contract [under PELRA] shall be in conflict with . . . rules promulgated under . . . municipal charters . . . provided that the . . . charters . . . are consistent with this chapter.

Because these two provisions were part of the same recodification, they should be read, if possible, as in harmony with each other. The district court concluded that a Charter provision which "limits or restricts" the City from negotiating collective bargaining agreements regarding "grievance procedures and the terms and conditions of employment" -- the scope of the duty to bargain imposed by § 179A.07, subd. 2 -- is not "consistent with this chapter" within the meaning of § 179A.20, subd. 2(2). We agree with this sensible reconciliation of the two statutes. As the Minnesota Supreme Court noted in Teamsters, 225 N.W.2d at 257, "[t]he phrase 'terms and conditions of employment' appears to have been borrowed from the National Labor Relations Act." Under federal labor law, terms and conditions of employment are mandatory subjects of collective bargaining. See 29 U.S.C. § 158(d); Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 209-15 (1964). Enforcing a Charter provision that is inconsistent with a collectively bargained term and condition of employment would interfere with the City's ability to fulfill its bargaining obligations under PELRA. On the other hand, Charter provisions dealing with other subjects, such as the "matters of inherent managerial policy" referred to in § 179A.07, subd. 1, do not conflict with the core purposes of collective bargaining and therefore override inconsistent PELRA contract provisions under § 179A.20, subd. 2(2).[4]

Construing the relevant PELRA provisions in this fashion, it is apparent that Somers had no property interest for due process purposes. Whether an employee may be terminated without cause is a mandatory subject of collective bargaining. The City and Local 363 negotiated a collective bargaining agreement in which employees gain the right not to be terminated without cause after a one-year probationary period. The

---

[4]Lunde v. Independent School District No. 256, 543 N.W.2d 703, 706 (Minn. App. 1996), relied upon by Somers, is not to the contrary. That decision applied the unconditional language of § 179A.20, subd. 2(1), whereas we deal in this case with the conditional "consistent with" proviso in § 179A.20, subd. 2(2).

Charter's grant of that right after a six-month probationary period conflicts with the collectively bargained provision and is therefore inconsistent with PELRA.

Somers argues there is no conflict because the collective bargaining agreement does not expressly preclude terminated employees from seeking a hearing before the Civil Service Commission under the City Charter. But the issue, for due process purposes, is not what procedural remedy Somers was entitled to pursue under state law. The issue is whether he had the substantive right not to be terminated without cause because he was no longer a probationary employee. That is a mandatory subject of collective bargaining. It was expressly addressed in the collective bargaining agreement, and therefore the inconsistent City Charter provision must give way.[5] Under the bargaining agreement, Somers was a probationary employee at the time of termination, and the district court properly granted the City summary judgment dismissing his § 1983 procedural due process claim.[6]

## II. ADA and MHRA Claims.

In February 1997, during the winter layoff for seasonal workers, Somers underwent knee surgery. In March, he discussed possible job openings in the City's

---

[5]Somers suggests it was illogical for the union to bargain away this favorable Charter provision. We suspect there are good reasons for negotiating a longer probationary period for some types of jobs, but in any event it was the union's prerogative to do so.

[6]For the same reasons, the district court correctly granted summary judgment dismissing Somers's breach of contract claim. His employment was governed by the collective bargaining agreement. Both the union and the Civil Service Commission properly applied that contract in concluding Somers was an at-will probationary employee who could be terminated without a Civil Service Commission hearing. See Civil Service Commission Rule 1.03 ("[a]greements reached under PELRA . . . supersede Civil Service Commission Rules whenever overlap exists").

Sanitation Department with a Department representative and was told he would not be listed for that strenuous work "because we don't want you to blow your knee out." In April, Somers reported his knee surgery to the Department of Public Works in discussing his return to work as a seasonal laborer. He was asked to submit a medical release and did so. At the June 6 informal hearing, he submitted an updated release that cleared him to return to work with no restrictions. In this action, Somers claims the City violated the ADA and the MHRA by denying him a job with the Department of Sanitation, refusing to call him back to work, and terminating him because of his real or perceived disability. Under the ADA, Somers is disabled if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Claims under the MHRA are analyzed the same as claims under the ADA. Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 574 (8th Cir. 2000).

Like the district court, we conclude these claims are without merit. It is undisputed that the Sanitation Department representative regarded Somers as having a temporary physical impairment that precluded him from jobs requiring the lifting of large compost bins. But, "an ADA plaintiff must do more than allege that he is regarded as having an impairment which prevents him from working at a particular job." Shipley v. City of Univ. City, 195 F.3d 1020, 1023 (8th Cir. 1999); see Sutton v. United Air Lines, Inc., 527 U.S. 471, 493 (1999). The Department of Public Works representative simply required Somers to submit a medical release and be cleared by the City's physician, a prudent requirement the City imposes on all employees who undergo surgery before they return to work. There is no evidence the Department of Public Works regarded Somers as disabled and not a shred of evidence that his knee surgery had anything to do with his termination as a seasonal laborer.

### III. Defamation Claim.

Finally, Somers claims that the reasons provided by defendants in the June 3 hearing notice and subsequent termination decision were false and defamatory. The district court granted summary judgment dismissing this claim on the ground that the City and its employees are entitled to a qualified privilege for communications concerning the reasons for discharge. We agree. To defeat the defense of qualified privilege, Somers must show that defendants acted with actual malice -- "ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." Ewald v. Wal-Mart Stores, Inc., 139 F.3d 619, 623 (8th Cir. 1998) (quotations omitted). As in Ewald, summary judgment is appropriate because the City conducted an adequate investigation before giving Somers notice of Civil Service Rules violations, and because there is no evidence that any defendant acted out of ill will, improper motive, or wantonly for the purpose of injuring him. Somers believed the City should have excused his failure to return to work because he never received the return-to-work notice. The City disagreed, either crediting its own records showing the notice was properly mailed or concluding Somers should have taken the initiative to learn when to report. This disagreement is not an adequate basis for a claim of defamation.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.