# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2029

_____

| | |
|---|---|
| Susan Peterson, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the |
| County of Dakota, Minnesota, a | * District of Minnesota. |
| Municipal corporation; Minnesota | * |
| AFSCME, Council No. 14, Local 36, | * |
| a Minnesota labor organization; et al., | * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted: November 13, 2006
Filed: March 8, 2007

_____

Before LOKEN, Chief Judge, LAY[*] and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

The Dakota County Social Services Department terminated Susan Peterson for falsifying a time record and making untruthful statements to supervisors. Peterson's union, Minnesota AFSCME, Council No. 14, Local 36 (the Union), filed a grievance on her behalf but declined to request arbitration when the County denied the

_____

[*]The HONORABLE DONALD P. LAY assumed permanent disability retirement status on January 3, 2007. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. R. 47E.

grievance. Peterson commenced this action against the County, the Union, and six County and Union officials, alleging § 1983 due process claims and pendent state law claims for defamation, tortious interference with contract, and civil conspiracy. The district court[1] dismissed a number of claims and then granted defendants summary judgment on the remaining claims. Peterson v. Dakota County, 428 F. Supp. 2d 974 (D. Minn 2006). Peterson appeals. Reviewing the district court's summary judgment rulings de novo, we affirm.

## I. Background

In early 2002, due to job performance issues, the Department reassigned Peterson from crisis unit social worker to the child and family intake unit, where she answered citizen phone calls relating to family conflicts, injuries to children, placing children in foster case, and assistance for the developmentally disabled. Weeks after beginning this job, Peterson was reprimanded when a caller complained that she made inappropriate comments about the caller while Peterson thought the caller was on hold. On April 8, 2003, five supervisors met to discuss a number of additional issues concerning Peterson's job performance. She was placed on administrative leave and sent home. Later that month, supervisors and Peterson discussed a memorandum summarizing these issues at a meeting attended by Deputy Director of Social Services Tina Isaac, Social Services Supervisor Rick Morrissey, Crisis Response Unit Supervisor Carol Duerr, and Union representatives Bridget Brown and Gerry Proskin.

Also in mid-April, an employee informed Duerr that Sergeant Curt Walter of the West St. Paul Police Department saw Peterson at a County courthouse on the morning of February 28, when Peterson should have been working in her office many miles away. After Walter confirmed the account, Duerr reported the news to Isaac,

---

[1]The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota.

who instructed Duerr and Morrissey to investigate. They confirmed that Walter and his partner were in the courthouse that morning, interviewed other persons also in the courthouse that morning, checked whether Peterson had any work-related reason to be at the courthouse, and checked her security card activity and phone and work intake logs. Nothing contradicted Walter's account.

At another meeting with Peterson on April 25, supervisors imposed a written reprimand and five-day suspension for making threatening and disrespectful comments to callers, failing to process a high risk intake call, providing false information to supervisors and clients, and violating data privacy rules. They also asked Peterson where she was on February 28. When Peterson responded she was in her office, Isaac advised that a police officer reported seeing her at the County courthouse. On May 2, Proskin advised Peterson the County had initiated an investigation into the courthouse allegation. A few days later, Peterson met with Duerr, Morrissey, Proskin, and Union Steward Leann Creger. Management explained that two police officers reported seeing her at the courthouse on the morning of February 28. They also gave Peterson a copy of her time sheet, which stated she worked eight hours in her office that day, and building access card records reflecting that she entered at 8:15 a.m. and again at 11:20 a.m. Peterson responded that she worked eight hours and, if she left the building, it was to run an errand.

On May 8, Deputy Employee Relations Director Nancy Hohbach notified Peterson in writing that the County was considering termination because witnesses placed her at the courthouse between 10:00 a.m. and 11:00 a.m. on February 28, contrary to her time record and her response to supervisor questioning. The letter notice advised that a pre-termination hearing would be held on May 13 to give Peterson "the opportunity to present information as to why [her] employment should not be terminated." Union representatives Brown and Proskin attended that hearing with Peterson. She again denied having been at the courthouse. When told the police officers were willing to testify, Peterson complained that she did not have access to

her computer to refute the claim. Brown checked the computer during a recess; it did not confirm Peterson's denial. Brown also interviewed one of the police officers, who confirmed seeing Peterson at the courthouse on February 28. The hearing concluded. On May 15, the County issued a letter advising Peterson she was terminated for the reasons stated in the May 8 letter.

The Union then filed a "third step" grievance on Peterson's behalf. An informal grievance proceeding was held on June 12, attended by Peterson; by Proskin, Brown, and Business Agent Kurt Errickson from the Union; and by Director of Social Services Patrick Coyne and Hohbach on behalf of the County. The Union representatives urged the County to reinstate Peterson; the County refused. The Union representatives then proposed that she be allowed to resign to avoid an unfavorable termination on her record. After the meeting, the County advised it would agree to this settlement if Peterson submitted a resignation letter. When Peterson did not do so, the County denied the grievance.

On June 19, Local 36 met to consider whether to challenge the grievance denial in arbitration. Peterson and her supporters spoke in favor of arbitration. Proskin and Brown spoke in opposition, arguing the grievance was weak and Peterson would not prevail. The Union members voted not to arbitrate, twenty-one to sixteen. Peterson appealed to the Union's Appeals Committee, disclosing for the first time that she now remembered visiting a newborn grandnephew at a hospital on the morning of February 28. After a meeting at which Peterson argued her position, the Union's Executive Board voted to uphold the decision not to arbitrate. This lawsuit followed.

## II. Discussion

**A. Tortious Interference.** Peterson first argues that the district court erred in dismissing her tortious interference claims against the individual defendants and the Union. To establish a tortious interference claim under Minnesota law, Peterson must

-4-

show: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc., 325 N.W.2d 20, 25 (Minn. 1982).

The six individual defendants were all employees of the County, the party guilty of the alleged breach of contract. An officer, agent, or employee acting within the scope of his or her duties is privileged to interfere with another employee's contract with the employer "if that person acts in good faith, whether competently or not, believing that his actions are in furtherance of the company's business. This privilege may be lost, however, if [the plaintiff proves that] the defendant's actions [were] predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff or employee." Nordling v. N. States Power Co., 478 N.W.2d 498, 507 (Minn. 1991). Here, the district court carefully reviewed the summary judgment record and concluded that Peterson failed to present evidence of malice or bad faith by any individual defendant. 428 F. Supp. 2d at 984-85. After careful review of the record, we agree. We also note the absence of evidence of a breach of contract by the County. Proof of a breach is an essential element of a tortious interference claim.

We will comment briefly on the tortious interference claims against the Union defendants because Peterson's briefs criticize the district court for failing to separately discuss those claims. Proskin and Brown were officers of the Union as well as County employees. Though the theory is never clearly articulated, apparently Peterson's claim is that these Union officers interfered with her employment contract by opposing arbitration. There is a simple answer to that contention -- the Union's decision not to arbitrate was based upon a 21-16 vote of the Local 36 membership, a decision upheld by the Executive Board of Council No. 14. Thus, even if the Union's decision not to arbitrate could be viewed as interfering with Peterson's employment

contract, a proposition we firmly reject, the actions of Proskin and Brown were not the cause of any injury from that interference.

As for the tortious interference claim against the Union itself, Peterson cites no authority for the notion that a union may be liable for tortious interference on account of its actions under a collective bargaining agreement in representing a member in disciplinary proceedings by the employer when the union declines to take the employee's grievance to arbitration. Minnesota law, like federal law, provides that the employee's exclusive remedy for wrongful conduct by the union in this situation is a suit for breach of the union's duty of fair representation. See Eisen v. State Dept. of Pub. Welfare, 352 N.W.2d 731, 735-36 (Minn. 1984).

**B. Due Process.** Peterson next argues the district court erred in dismissing her § 1983 procedural due process claims. Peterson argues that she had a due-process-protected property interest in her continued employment, and that she was afforded inadequate pre-termination procedures before biased decision-makers and no meaningful post-termination proceeding at which she could cross examine the police officers and present evidence supporting her position. She relies primarily on Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 900-02 (8th Cir.), cert. denied, 513 U.S. 964 (1994). Defendants concede Peterson had a protected property interest in continued County employment. See generally Somers v. City of Minneapolis, 245 F.3d 782, 785 (8th Cir. 2001).

The district court dismissed these due process claims because (i) unlike the plaintiff in Winegar, Peterson was given oral and written pre-termination notice of the charges against her and an opportunity to respond in person and to present supporting information; (ii) Peterson was afforded adequate post-termination process -- mandatory grievance and arbitration procedures under the collective bargaining agreement between the County and the Union; and (iii) Peterson presented no evidence that the County's ultimate decision-makers, Hohbach and Director of

-6-

Employee Relations Will Volk, were biased or prejudiced.  428 F. Supp. 2d at 979-982.  After careful review of the record, we agree with these conclusions.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-46 (1985); Larson v. City of Fergus Falls, 229 F.3d 692, 696-98 (8th Cir. 2000); Riggins v. Bd. of Regents of Univ. of Neb., 790 F.2d 707, 711-12 (8th Cir. 1986).[2]

Peterson also argues that defendants deprived her of a distinct due process liberty interest.  See generally Neal v. Fields, 429 F.3d 1165, 1167-68 (8th Cir. 2005).  In most situations, pre-termination and post-termination procedures that adequately protect a public employee's property interest in continued employment adequately protect her liberty interest as well.  See Schleck v. Ramsey County, 939 F.2d 638, 643 (8th Cir. 1991).  Here, particularly given the undisputed evidence that the County offered Peterson the opportunity to resign, rather than be terminated, and the lack of evidence that the County published the reasons for her termination to third parties, the contention is without merit.

**C. Defamation.**  Peterson next argues the district court erred in dismissing her claims that the County, the Union, and individual defendants Proskin, Coyne, Isaac, and Morrissey defamed Peterson at various times during the County's discipline and termination proceedings by calling her incompetent, accusing her of falsifying a time card, saying she wore bedroom slippers to work, and so forth.  The district court concluded that Peterson was a "public official" for defamation purposes and that she

---

[2]Regarding the allegation of a biased decision-maker, Peterson argues that the decision to terminate was made by Director of Social Services Coyne, not by Hohbach and Volk, and that Coyne told Peterson she was dishonest, gossiped with Proskin about Peterson wearing bedroom slippers at work, and was a friend of supervisor Morrissey, who called Peterson incompetent.  None of these allegations comes close to overcoming "the presumption of honesty and integrity" that applies in determining whether due process required a different decision-maker.  Hortonville Jt. Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 497 (1976).

failed to present sufficient evidence that any defendant acted with actual malice, that is, "with knowledge [the allegedly defamatory] statements were false or with reckless disregard for truth." 428 F. Supp. 2d at 983. Peterson argues that she was not a public official, that she presented sufficient evidence of actual malice, and that the issue of qualified privilege must be submitted to a jury.

After careful review of the record, we agree with the district court that Peterson was a public official within the meaning of New York Times v. Sullivan, 376 U.S. 254 (1964), and that she failed to show that any defendant acted with actual malice. The Supreme Court of Minnesota considers both of these issues to be questions of law, so the grant of summary judgment on these grounds is clearly proper. See Britton v. Koep, 470 N.W.2d 518, 520, 524 (Minn. 1991). In addition, we agree with defendants that their allegedly defamatory statements during the course of Peterson's employment were entitled to a qualified privilege. This is another reason why her failure to show actual malice defeats these defamation claims. See Lewis v. Equitable Life Assur. Soc'y of the U.S., 389 N.W.2d 876, 889-90 (Minn. 1986).

We have carefully considered the other issues raised on appeal and conclude they are without merit. Accordingly, the judgment of the district court is affirmed.

_____